**In the United States District Court
Southern District of Texas, Houston Division**

| | | |
|---|---|---|
| **LLOYD KELLEY** | § | |
| **Plaintiff** | § | |
| | § | |
| **vs.** | § | **Civil Action No. 4:23-cv-00807** |
| | § | |
| **RANDALL SORRELS** | § | |
| **AND SORRELS LAW** | § | |
| **Defendants** | § | |

### DEFENDANTS RANDALL SORRELS AND SORRELS LAW'S SECOND AMENDED MOTION FOR SUMMARY JUDGMENT AND MOTION TO DISMISS

# Contents

I.  Nature and Stage of the Proceeding ...................................................................1

II. Background Facts ............................................................................................1

III.   Statement of the Issues...............................................................................3

IV.   Summary of the Argument..........................................................................4

V. Argument........................................................................................................4

   A.  Kelley alleges only federal question jurisdiction.......................................4

   B.  Summary Judgment Standard ...................................................................5

   C.  Summary judgment may be granted without any discovery.......................6

   D.  Elements of Claims under the Federal Wiretap Act and the Texas Wiretap Act.........7

      1.  An essential element of the Wiretap Act claims is that no one who was present during the communications consented to the interception or recording. .............7

      2.  An essential element of the Wiretap Act claims is that the defendant knew or had reason to know that the interception of the communication was illegal and not consented to...................................................................11

   E.  The Court should grant summary judgment on the Federal and Texas Wiretap Act claim.....................................................................13

      1.  Unrebutted evidence proves that Chris Wyatt was present during the communications he recorded, and he consented to the recording.....................14

      2.  Unrebutted evidence proves that Sorrels did not know or have reason to know that the recording of the communications violated the Wiretap Acts and was not consented to by Wyatt and Choudhri.............................................17

      3.  Choudhri's Declaration does not create an issue of material fact.....................20

      4.  There is an absence of evidence that Sorrels' disclosure of the communications caused Kelley actual damages or that Sorrels received any profits from such disclosure. ...................................................20

   F.  If the Court grants summary judgment on the Federal Wiretap Act claim, it should dismiss the remaining state-law claims.................................................21

   G.  The Court lacks supplemental jurisdiction over Plaintiff's state law claims............21

VI.   Conclusion ...............................................................................22

## Table of Authorities

Page(s)

**Cases**

*Alameda v. State,*
    235 S.W.3d 218 (Tex. Crim. App. 2007)..........................................................................7

*Am. Family Life Assurance Co. v. Biles,*
    714 F.3d 887 (5th Cir. 2013)..........................................................................6

*Armstrong v. Marathon Petroleum Co., LP,*
    No. 3:16-CV-00115, 2018 WL 2976732 (S.D. Tex. May 1, 2018)................................16

*Bailey v. KS Mgmt. Services, L.L.C.,*
    35 F.4th 397 (5th Cir. 2022)..........................................................................6

*Boswell v. Fisher,*
    No. 05-80781-CIV, 2006 WL 8433669 (S.D. Fla. Apr. 24, 2006)................................19

*Briscoe v. LaHue,*
    460 U.S. 325 (1983)..........................................................................2

*Brooks v. Am. Broad. Cos.,*
    737 F. Supp. 431 (N.D. Ohio 1990)..........................................................8, 9

*United States v. Brown,*
    No.CRIM.A. 10-100-BAJ, 2011 WL 576901 (M.D. La. Feb. 9, 2011) ..........................9

*Burnside v. Anthem Blue Cross Blue Shield,*
    CIV. A. 1:05-CV-570, 2006 WL 3499202 (E.D. Tex. Dec. 1, 2006)............................22

*Caro v. Weintraub,*
    618 F.3d 94 (2d Cir. 2010)..........................................................................10

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986)..........................................................................5, 19

*Crumbley v. Helem,*
    485 Fed. Appx. 1 (5th Cir. 2012)..........................................................................16

*Day v. Wells Fargo Bank Nat'l Ass'n,*
    768 F.3d 435 (5th Cir. 2014)..........................................................................16

iii

*Forsyth v. Barr*,
    19 F.3d 1527 (5th Cir. 1994) ..................................................................................... 11

*Grandbouche v. Adams*,
    529 F. Supp. 545 (D. Colo. 1982) ............................................................................ 8, 9

*Guillot v. Russell*,
    59 F.4th 743 (5th Cir. 2023) ....................................................................................... 5

*Hamed v. Pfeifer*,
    647 N.E.2d 669 (In. App. [3rd Dist.] 1995) ............................................................... 2

*Heggemeier v. Caldwell Cnty., Tex.*,
    826 F.3d 861 (5th Cir. 2016) ................................................................................ 4, 21

*Hoffa v. United States*,
    385 U.S. 293 (1966) .................................................................................................. 18

*Houston v. Tex. Dep't of Agric.*,
    17 F.4th 576 (5th Cir. 2021) ....................................................................................... 5

*Jones v. Gulf Coast Rest. Grp., Inc.*,
    8 F.4th 363 (5th Cir. 2021) ......................................................................................... 6

*Lewellen v. Raff*,
    843 F.2d 1103 (8th Cir. 1988) .................................................................................... 8

*Marshall v. MarOpCo, Inc.*,
    223 F. Supp. 3d 562 (N.D. Tex. 2017) ..................................................................... 21

*McCann v. Iroquois Memorial Hosp.*,
    622 F.3d 745 (7th Cir. 2010) .................................................................................... 12

*Merisier v. Johnson Cnty., Tex.*,
    No. 420CV00520SDJCAN, 2021 WL 1711468 (E.D. Tex. Jan. 31, 2021) ................... 10

*Nettles v. GTECH Corp.*,
    606 S.W.3d 726 (Tex. 2020) ..................................................................................... 21

*Nix v. O'Malley*,
    160 F.3d 343 (6th Cir. 1998) .................................................................................... 13

*Nola Spice Designs, L.L.C. v. Haydel Enters.*,
    783 F.3d 527 (5th Cir. 2015) ......................................................................... 5, 16, 19

iv

*Pitts Sales, Inc. v. King World,*
   *Prods.*, 383 F. Supp. 2d 1354 (S.D. Fla. 2005)...................................................8, 9, 14, 15

*Progressive Cnty. Mut. Ins. Co. v. Lujan,*
   No. 6:15-CV-009-C, 2015 WL 11035583 (N.D. Tex. Oct. 5, 2015)..............................16

*Putnam v. Williams,*
   652 F.2d 497 (5th Cir. 1981)........................................................................................21

*Saldana-Fountain v. United States,*
   693 F. App'x 295 (5th Cir. 2017) ................................................................................22

*Smith v. Reg'l Transit Auth.,*
   827 F.3d 412 (5th Cir. 2016)..........................................................................................6

*Springboards to Educ., Inc. v. Pharr-San Juan-Alamo Indep. Sch. Dist.,*
   33 F.4th 747 (5th Cir. 2022).........................................................................................5

*Stephens v. Dolcefino,*
   126 S.W.3d 120 (Tex. App.—Houston [1st Dist.] 2003, pet. denied)...........................10

*Thompson v. Dulaney,*
   970 F.2d 744 (10th Cir. 1992)................................................................................11, 17

*United Mine Workers of America v. Gibbs,*
   383 U.S. 715 (1966).....................................................................................................22

*United States v. Caceres,*
   440 U.S. 741 (1979).......................................................................................................7

*United States v. Fanning,*
   477 F.2d 45 (5th Cir. 1973)..........................................................................................18

*United States v. Moore,*
   452 F.3d 382 (5th Cir. 2006)..........................................................................................5

*United States v. Willoughby,*
   860 F.2d 15 (2d Cir. 1988)..............................................................................................8

*United States v. Wuliger,*
   981 F.2d 1497 (6th Cir. 1992).......................................................................................12

*Weeks v. Union Camp Corp.,*
   215 F.3d 1323 (table), 2000 WL 727771  (4th Cir. 2000)..............................................13

**Statutes**

18 U.S.C. §2511 .................................................................................................... passim

18 U.S.C. § 2520(c)(2) ..................................................................................................20

28 U.S.C. § 1367 .......................................................................................................3, 22

Tex. Civ. Prac. & Rem. Code. § 123.001 and § 123.002 ...............................................3, 10

Texas Penal Code § 16.02(c)(4)(a) ...............................................................................18

## I.    NATURE AND STAGE OF THE PROCEEDING

On July 10, 2023, this case was reassigned to the docket of United States District Judge Keith P. Ellison.

Plaintiff Lloyd Kelley's Original Complaint alleges a claim under the Federal and Texas Wiretap Acts, and unrelated Texas state law claims for tortious interference, defamation, conspiracy, aiding and abetting, and principal-agent liability.

Defendants Randall Sorrels and Sorrels Law (collectively "Sorrels") have answered.

Sorrels moves for summary judgment on the Wiretap claims, and for dismissal of the Texas state law claims.

## II.    BACKGROUND FACTS

All or parts of the phone communications, which Kelley alleges were recorded in violation of the Wiretap Acts, have been introduced by attorneys other than Sorrels as evidence of Kelley's fraud in at least three legal proceedings.[1]

Kelley is also a defendant in a pending federal lawsuit predicated in part on these phone communications.[2]

In an illegitimate attempt to defend against his incriminating phone communications, Kelley filed suit in this action on July 1, 2022 against Joe Saenz, Joseph Hibbard, John Brannon, Christopher Ramey, Scott Breitenwischer, Wayne Dolcefino, Marc Sherrin, and Salvador Ballesteros for violations of the Federal Wiretap Act for disclosing the recordings of Kelley's communications in various legal proceedings. *See* Plaintiff's Original

---

[1] Cause No. 2016-64847; 2017 Yale Development, LLC v. Steadfast Funding, LLC, In the 190th Judicial District Court, Harris County, Texas, and Case No. 21-40365; *Fugedi v. Steatfast Funding, et al.*, In the United States Court of Appeals for the Fifth Circuit.

[2] *See* Plaintiff's Original Verified Complaint in Cause No. 4:22-cv-00905; *Steadfast 829 Holdings, Inc. v. 2017 Yale Development, LLC, et al.*, In the United States District Court for the Southern District of Texas, Houston Division.

1

Complaint, in Civil Action No. 4:22-cv-2175.

Eight months later, Kelley brought this same claim against Sorrels, who represented one of Kelley's former clients in an arbitration proceeding against Kelley.

Christopher Ramey provided Sorrels with: (1) a "MEMORANDUM OF LAW CONFIRMING ADMISSIBILITY OF WYATT AUDIO," and the Declaration of Chris Wyatt, along with other supporting exhibits, and (2) Wyatt's recordings of the three conversations referenced in Wyatt's Declaration in which Kelley and Ali Choudhri participated. Exhibit 3, Sorrels Declaration. Sorrels has no recordings of Kelley's conversations other than the three referenced in Wyatt's Declaration.

The interception or recording of a communication does not violate the Federal Wiretap Act or the Texas Wiretap Act if any of the parties present during the communication consented to the interception and recording. The Memorandum, Wyatt's Declaration, and the other supporting exhibits indicate that: (1) Choudhri asked Wyatt to record these conversations, (2) Wyatt was present with Choudhri when he recorded these conversations, and (3) both Choudhri and Wyatt therefore consented to the recording of these conversations. *Id.* Based on this evidence, Sorrels correctly determined that recording these conversations did not violate the Federal Wiretap Act or the Texas Wiretap Act. *Id.* The only disclosure that Sorrels has made of the recordings is that he used them as evidence in an arbitration proceeding. *Id.* Such use is subject to absolute immunity.[3]

---

[3] In *Hamed v. Pfeifer*, 647 N.E.2d 669, 671 (In. App. [3rd Dist.] 1995), the court of appeals held that an attorney was not liable for violating the Wiretap Act by disclosing the tape recording to a jury in a federal court action because "participants in a judicial proceeding, including judges, attorneys and witnesses are absolutely immune from liability for their judicial actions." *Id*. at 672. (citing *Briscoe v. LaHue*, 460 U.S. 325, 334-36 (1983)).

### III.    STATEMENT OF THE ISSUES

Under the Federal and Texas Wiretap Acts, Kelley has the burden to prove:

1.  No party to the communications, including all those present, consented to the interception or recording;

2.  Sorrels knew or had reason to know that the communications were intercepted or recorded without the consent of any of the parties or persons who were present; and

3.  Sorrels intentionally disclosed the contents of the communications to others.

*See* 18 U.S.C. §2511 and Tex. Civ. Prac. & Rem. Code. § 123.001 and § 123.002.

This motion presents five issues:

1.  Should the Court grant summary judgment on Kelley's claim under the Federal and Texas Wiretap Acts because the evidence proves that Wyatt was present with Choudhri when he recorded the conversations, and Wyatt, therefore, consented to the recording of the conversations?

2.  Should the Court grant summary judgment on Kelley's claim under the Federal and Texas Wiretap Acts because the evidence proves that Sorrels did not know or have reason to know that the communications were intercepted or recorded without the consent of any of the persons who were present?

3.  Is there an absence of evidence that Sorrels' alleged violation of the Federal Wiretap Act caused Kelley any actual damage?

4.  Should the Court, under 28 U.S.C. § 1367(c), decline to exercise Kelley's Texas state law claims because Kelley has no viable claim under the Federal Wiretap Act and the general rule is that the court should decline jurisdiction of the state-law claims when all federal-law claim is eliminated before trial?

5.  Does the Court lack supplemental jurisdiction of the state-law claims because Kelley's Complaint does not allege facts showing that these claims derive from Sorrels's alleged disclosure of communications in violation of the Federal Wiretap Act?

3

## IV.   SUMMARY OF THE ARGUMENT

The Court should grant summary judgment on Kelley's claim under the Federal and Texas Wiretap Acts because the evidence proves: (1) Wyatt was present with Choudhri when he recorded the communications at issue and he, therefore, consented to the recording of the conversations, and (2) Sorrels did not know or have reason to know that the communications were intercepted or recorded without the consent of any of the persons who were present.

The Court should also grant summary judgment on Kelley's claim under the Federal Wiretap Act because there is an absence of evidence that Sorrels' disclosure of the communications caused Kelley any actual damage or that Sorrels made any profit.

The Court should dismiss the state law claims for tortious interference, defamation, conspiracy, and aiding and abetting because: (1) Kelley has no viable claim under the Federal Wiretap Act and, under 28 U.S.C. § 1367(c), the general rule is "that a court should decline to exercise jurisdiction over remaining state-law claims when all federal-law claims are eliminated before trial,"[4] and (2) the Court lacks supplemental jurisdiction over the state-law claims because Kelley's Complaint does not allege facts showing that these claims derive from Sorrels' alleged disclosure of communications in violation of the Federal Wiretap Act.

## V.   ARGUMENT

### A.  Kelley alleges only federal question jurisdiction.

Kelley does not allege diversity jurisdiction. He alleges only that this Court has federal question jurisdiction because "the claims in this suit are based upon a federal question; the Electronic Communications Privacy Act, 18 U.S.C. §§2510–2521." Doc. 1, ¶5.

---

[4] *Heggemeier v. Caldwell Cnty., Tex.*, 826 F.3d 861, 872 (5th Cir. 2016).

This Act is better known as the Federal Wiretap Act.[5] The Complaint also alleges state law claims unrelated to the federal claim—tortious interference, defamation, and conspiracy.

### B. Summary Judgment Standard

"Summary judgment is appropriate where 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Springboards to Educ., Inc. v. Pharr-San Juan-Alamo Indep. Sch. Dist.*, 33 F.4th 747, 749 (5th Cir. 2022) (quoting Fed. R. Civ. P. 56(a)). Although courts will resolve factual controversies in favor of the nonmoving party, an actual controversy exists only when both parties have submitted evidence of contradictory facts. *Guillot v. Russell*, 59 F.4th 743, 750 (5th Cir. 2023). If the evidence is merely colorable or not significantly probative, summary judgment is appropriate. *Id*.

There can be no genuine dispute as to a material fact where a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id*. at 323.

After the movant meets its Rule 56(c) burden, "the non-movant must come forward with 'specific facts' showing a genuine factual issue for trial." *Houston v. Tex. Dep't of Agric.*, 17 F.4th 576, 581 (5th Cir. 2021). "Where the non-movant bears the burden of proof at trial, 'the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial.'" *Nola Spice Designs, L.L.C. v. Haydel Enters.*,

---

[5]This Act is formally known as Title III of the Omnibus Crime Control and Safe Streets Act of 1968, as amended by the Electronic Communications Privacy Act of 1986 and the Communications Assistance for Law Enforcement Act of 1994. *United States v. Moore*, 452 F.3d 382, 386 n.2 (5th Cir. 2006). For brevity, Defendants refer to it as the "Federal Wiretap Act."

783 F.3d 527, 536 (5th Cir. 2015). Although all reasonable inferences are drawn in the nonmovant's favor, a nonmovant "cannot defeat summary judgment with 'conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence.'" *Jones v. Gulf Coast Rest. Grp., Inc.*, 8 F.4th 363, 369 (5th Cir. 2021) (quoting reference omitted).

**C. Summary judgment may be granted without any discovery.**

"[A] party may file a motion for summary judgment at any time until 30 days before the close of discovery." Fed. R. Civ. P. 56(b). Summary judgment may be granted before discovery takes place. However, Rule 56(d) provides:

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or take discovery; or (3) issue any other appropriate order.

Fed. R. Civ. P. 56(d). A Rule 56(d) movant first must demonstrate that additional discovery will create a genuine issue of material fact. *See Smith v. Reg'l Transit Auth.*, 827 F.3d 412, 422–23 (5th Cir. 2016). "More specifically, the non-moving party must set forth a plausible basis for believing that specified facts, susceptible of collection within a reasonable time frame, probably exist and indicate how the emergent facts, if adduced, will influence the outcome of the pending summary judgment motion." *Bailey v. KS Mgmt. Services, L.L.C.*, 35 F.4th 397, 401 (5th Cir. 2022). "The nonmovant may not simply rely on vague assertions that discovery will produce needed, but unspecified, facts." *Id.*

In *Am. Family Life Assurance Co. v. Biles*, 714 F.3d 887, 894–95 (5th Cir. 2013), the Fifth Circuit held that the district court did not abuse its discretion by not allowing appellants to depose a key witness before ruling on the motion for summary judgment because it was unlikely that the witness would make admissions contrary to facts he stated in his affidavit.

That proved to be true in this action. This motion for summary judgment is predicated on Chris Wyatt's Declaration. Kelley assisted with deposing Chris Wyatt on January 10,

6

2023, in which Mr. Wyatt was examined regarding his recording of the conversations at issue. Kelley has not identified any testimony by Wyatt that contradicts the statement in his Declaration that he was present with Choudhri when he recorded the conversations. Therefore, any Rule 56(d) motion by Kelley should be denied.

**D. Elements of Claims under the Federal Wiretap Act and the Texas Wiretap Act**

Kelley's Complaint alleges that it is an action to enforce the Federal Wiretap Act and the Texas Wiretap Act, which have the same elements. *See Alameda v. State*, 235 S.W.3d 218, 220, 222 (Tex. Crim. App. 2007) (noting that "the federal wiretap statute is substantively the same as the Texas statute").

### 1. *An essential element of the Wiretap Act claims is that no one who was present during the communications consented to the interception or recording.*

Section 2511(1)(a) of the Federal Wiretap Act makes it illegal to (1) intentionally intercept any wire, oral, or electronic communication. 18 U.S.C.S. § 2511(1)(a). Kelley's Complaint does not claim that Sorrels intercepted any communication, but claims that Sorrels violated Section 2511(1)(c) of the Act, which imposes liability on any person who "intentionally discloses, or endeavors to disclose, to any other person the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection." 18 U.S.C.S. § 2511(1)(c).

But there is no violation of the Wiretap Act if any of the parties consented to the interception:

> It shall not be unlawful under this chapter [18 USCS §§ 2510 et seq.] for a person not acting under color of law to intercept a wire, oral, or electronic communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception . . . .

18 U.S.C. § 2511(2)(d). While "18 U.S.C. § 2510 et seq. regulates electronic surveillance

7

conducted without the consent of either party to a conversation, federal statutes impose no restrictions on recording a conversation with the consent of one of the conversants." *United States v. Caceres*, 440 U.S. 741, 750 (1979). The prohibition against interception does not apply when one of the parties to the communication has consented to such interception. *United States v. Willoughby*, 860 F.2d 15, 19 (2d Cir. 1988). *See Lewellen v. Raff*, 843 F.2d 1103, 1115 (8th Cir. 1988) (18 U.S.C. §§ 2510–2520 was not violated because Mrs. Patterson, one of the parties to the communications at issue, had consented to the interception).

A person is a party to communications if he is present during the communications; he need not participate in the communications to consent to the interception. "'Party to the communication' under 18 USCS § 2511(2)(d) is defined as party who is present when oral communication is uttered and need not directly participate in conversation." *Pitts Sales, Inc. v. King World Prods.*, 383 F. Supp. 2d 1354, 1361 (S.D. Fla. 2005). In *Pitts Sales*, 383 F. Supp. 2d at 1361-62, the court concluded that this interpretation was supported by two decisions—*Grandbouche v. Adams*, 529 F. Supp. 545, 548 (D. Colo. 1982) and *Brooks v. Am. Broad. Cos.*, 737 F. Supp. 431, 433 (N.D. Ohio 1990).

In *Grandbouche*, an association's employee recorded oral communications uttered in her presence with a wireless microphone provided by federal agents. 529 F. Supp. 545. The defendants relied upon the consent exception under the anti-wiretap statute, § 2511(2)(c), to argue that their conduct did not violate the Fourth Amendment. The plaintiffs argued that the exception did not apply since the employee making the recordings was not a party to the intercepted communications given that the microphone picked up many conversations among employees in which the interceptor "although present . . . neither spoke nor was included as a silent participant." *Id*. at 548. The court disagreed and found the consent exception applicable. The court specifically held that plaintiffs had relinquished any

8

expectation of privacy by speaking in the presence of a third party, noting that "the simple fact remains that [the interceptor] could hear those conversations, and could listen attentively without indicating to the plaintiffs that she was doing so." *Id*.

In *Brooks*, the plaintiff had filed a claim under the wiretap statute for interception of an oral communication arising from a taped interview taken by a reporter. Plaintiff argued that the one-party consent exception did not apply because the interview was essentially a one-sided conversation and the one party doing all of the talking, the interceptor, should not be able to take advantage of the exception. *Id*. at 437. The Court found no case law or legislative authority to support this novel argument, stating that a requirement of meaningful participation by the non-consenting party "would do more harm than good." *Id*. "Courts would be stalled trying to determine how much participation is necessary, and there would be serious vagueness problems with such a requirement." *Id*.

In *Pitts Sales*, 383 F. Supp. 2d at 1361–62, the court found the reasoning in *Brooks* persuasive, discussing the problems that any other interpretation would create:

> If Defendant Yule's presence is not enough to make him a party to the communication, the Court would be stalled trying to determine the extent of Yule's participation, whether Yule spoke at any point during the communication, whether any of the oral communications were directed at Yule, whether a speaker made eye contact with Yule so as to include him in the conversation, etc. For example, in one of the excerpts played during the oral arguments, Plaintiff acknowledged that during certain portions of the excerpt, which took place in a hotel conference room, Yule had participated in the communication while in other segments he had not. Yet, Plaintiff argued that the one-party consent exception should not apply to those portions of the excerpt in which Yule was not spoken to or did not speak, leaving it up to the Court to determine at which point in the conversation Yule ceased being a party and at which point he regained his status as a party to the communication. The Court finds that accepting Plaintiff's interpretation of the statute would create practical problems not envisioned by the statute.

Accordingly, the court entered summary judgment in favor of Defendant Yule on the wiretap

claim under 18 U.S.C. § 2511. *Id*. at 1362.

Also, in *United States v. Brown*, No. CRIM.A. 10-100-BAJ, 2011 WL 576901, at *3 (M.D. La. Feb. 9, 2011), the court followed *Pitts Sales*. It held that "a person whose presence is apparent in the midst of a communication is considered a party, whether or not that person actually participates verbally in the communication." *Id*.

Further, a party to a communication need not be invited to participate; he need only be present. *See also Caro v. Weintraub*, 618 F.3d 94, 97 (2d Cir. 2010).

Therefore, if the interception or recording of the communications is made by a person who is present when the communications are made, there is no violation of the Wiretap Act, even if that person does not participate in the conversation.

As shown above, under the express terms of Section 2511, Kelley has the burden to prove that:

1.  No party to the communications, including all those present, consented to the interception or recording;

2.  Sorrels knew or had reason to know that the communications were intercepted or recorded without the consent of any of the parties or persons who were present; and

3.  Sorrels intentionally disclosed the contents of the communications to others.

Kelley's Complaint also alleges Sorrels violated the Texas Wiretap Act, Tex. Civ. Prac. & Rem. Code. § 123.001 et seq., which, like the Federal Wiretap Act, requires proof that none of the parties consented to the interception or recording of the conversation and that the defendant divulged information that he knew or reasonably should have known was obtained by interception of the communication that none of the parties consented to.[6]

---

[6] *See* Tex. Civ. Prac. & Rem. Code. § 123.001 and § 123.002; *Merisier v. Johnson Cnty., Tex.*, No. 420CV00520SDJCAN, 2021 WL 1711468, at *5 (E.D. Tex. Jan. 31, 2021), report and recommendation adopted, No. 4:20-CV-520-SDJ, 2021 WL 1709950 (E.D. Tex. Apr. 29, 2021) ("the Texas Wiretap statute also provides such a 'consent' exception in the statutory definition of 'interception'"); *Stephens v. Dolcefino*, 126 S.W.3d 120, 133 (Tex. App.—Houston [1st Dist.] 2003,

**2. An essential element of the Wiretap Act claims is that the defendant knew or had reason to know that the interception of the communication was illegal and not consented to.**

As explained by the Tenth Circuit, the Federal Wiretap Act, 18 U.S.C. § 2511(1)(c), requires proof that the defendant knew sufficient facts concerning the circumstances of the interception such that the defendant could determine that the interception was prohibited— specifically, that no party to the intercepted conversation consented to the interception:

> Liability for intercepting or procuring another to intercept communications under subsections (a) and (b) of 2511(1) requires that a plaintiff prove intentional conduct. However, liability under subsections (c) and (d) of 2511(1) for use and disclosure of information obtained from the contents of intercepted communications requires more. The use or disclosure must still be intentional, but in addition, a plaintiff must show that a defendant "know[s] or has reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection." This language, found in each of subsections (c) and (d), compels the conclusion that, to establish liability under one of those sections, a plaintiff must demonstrate a greater degree of knowledge on the part of a defendant. The defendant must know 1) the information used or disclosed came from an intercepted communication, and 2) sufficient facts concerning the circumstances of the interception such that the defendant could, with presumed knowledge of the law, determine that the interception was prohibited in light of Title III.
>
> . . . For example, it is not enough to show that a defendant merely knew he was using or disclosing information from an intercepted communication. **It must also be shown that the defendant knew, inter alia, that neither party to the intercepted conversation had consented to the interception.**

*Thompson v. Dulaney*, 970 F.2d 744, 749 (10th Cir. 1992) (emphasis added). "[I]t is not enough to show that a defendant merely knew he was using or disclosing information from an intercepted communication. It must also be shown that the defendant knew, inter alia, that neither party to the intercepted conversation had consented to the interception." *Forsyth v.*

---

pet. denied) (clarifying that the Texas Wiretap Act is not violated if at least one party to the communication consents to interception).

*Barr*, 19 F.3d 1527, 1538 n. 21 (5th Cir. 1994) (quoting Thompson ).

Absent evidence that the defendant knew or had reason to know that the interception of the communication was illegal and not consented to, there is no violation of the Wiretap Act. For example, in *McCann v. Iroquois Memorial Hosp.,* 622 F.3d 745 (7th Cir. 2010), Valerie McCann and Dr. Leslie Lindberg had a conversation in which they criticized hospital administration. Unbeknownst to them, their conversation was recorded by a dictation machine, transcribed, and handed to those they criticized. Lindberg and McCann sued the hospital's CEO, Leurck, for violating the Wiretap Act by disclosing the recording to the Hospital's board of trustees. *Id.* at 749. The Seventh Circuit recognized that the plaintiff must prove that the defendant knew that the interception was illegal:

> To be liable under § 2511(1)(c) or § 2511(1)(d), a defendant must know or have reason to know "'sufficient facts concerning the circumstances of the interception such that the defendant could, with presumed knowledge of the law, determine that the interception was prohibited in light of [the Wiretap Act].'" (citations omitted). It is not enough to know that the conversation was intercepted; the defendant must also be able to tell that none of the statutory exceptions apply. (citations omitted). If the defendant does know the interception was illegal, then he is liable if he "uses" or "discloses" to others the contents of the recorded conversation. 18 U.S.C. §§ 2511(1)(c), (d), 2520.

*McCann*, 622 F.3d at 753. The Seventh Circuit affirmed the summary judgment in favor of Leurck because "Leurck testified that Freed told him that the recording was made because Lindberg forgot to turn off his dictation machine (again), and if that is all Leurck knew, then he had no reason to think that the recording violated the statute, which does not cover inadvertent interceptions." *Id*. The plaintiffs argued that the letter their counsel sent to Leurck accusing Leurck of illegally intercepting the conversation gave Leurck a reason to know that the recording was illegal. *Id*. at 754. The Seventh Circuit rejected this argument: "But the letter provides only a bald allegation and no concrete facts, let alone facts that Leurck was required to believe, to undermine his belief that the recording was made

12

accidentally." *Id*.

"Although an attorney must not turn a blind eye to the obvious, he should be able to give his clients the benefit of the doubt." *United States v. Wuliger*, 981 F.2d 1497, 1505 (6th Cir. 1992). A plaintiff "cannot overcome summary judgment merely by showing that it was reasonably foreseeable that the interception occurred illegally." *Nix v. O'Malley*, 160 F.3d 343, 349 (6th Cir. 1998). In *Weeks*, the Fourth Circuit affirmed the summary judgment against the Wiretap Act claim because: "Viewing the facts and reasonable inferences in the light most favorable to Webster and Weeks, we do not believe that a jury could conclude that Union Camp was aware, at the time it used the recording, of sufficient facts to allow it to determine-beyond, perhaps, speculative guesswork-that the recording was unlawful." *Weeks v. Union Camp Corp.*, 215 F.3d 1323 (table), 2000 WL 727771, * 5  (4th Cir. 2000).

Thus, to establish a violation of the Wiretap Act and avoid summary judgment, Kelley has the burden to present direct evidence that when Sorrels allegedly disclosed or used the contents of Wyatt's recordings to other persons, he knew or had reason to know that the interception was illegal. Specifically, that Sorrels knew that Choudhri did not consent to recording the communications and Wyatt was not present with Choudhri when he recorded the communications. There is no such evidence.

### E.  The Court should grant summary judgment on the Federal and Texas Wiretap Act claim.

Sorrels is entitled to summary judgment because the unrebutted evidence proves: (1) Wyatt consented to the recording of the communications by recording them, and (2) Sorrels did not know or have reason to know that Choudhri did not consent to recording the communications and Wyatt was not present with Choudhri when he recorded the communications. Wyatt was present with Choudhri when he recorded the communications.

***1.   Unrebutted evidence proves that Chris Wyatt was present during the communications he recorded, and he consented to the recording.***

As discussed above, an essential element of the Wiretap Act claims is that no one who was present during the communications consented to the interception or recording of the communications. *See e.g.*, *Pitts Sales*, 383 F. Supp. 2d at 1361–62.

Kelley's Complaint alleges that the communications at issue were intercepted by Chris Wyatt, who recorded oral phone communications between Kelley and Choudhri Doc. .1 ¶7, ¶9. Unrebutted evidence proves that these phone communications were broadcast on Choudhri's speakerphone, and Wyatt, at Choudhri's request, was present and recorded these communications with his cell phone. Because Wyatt recorded the communications, he clearly consented to the recording.

Eight months before suing Sorrels, Kelley sued eight persons, including investigative reporter Wayne Dolcefino, for violations of 18 U.S.C. §§ 2510–2521 for disclosing the communications that Wyatt recorded—the same claim Kelley now asserts against Sorrels. *See* Civil Action No. 4:22-cv-02175, *Kelley v. Saenz et al*, in this Court. Dolcefino filed a Motion to Dismiss. Exhibit 1. Attached to Dolcefino's motion as Exhibit D and as Exhibit 2 this Motion is the Declaration of Chris Wyatt, made under the penalty of perjury, stating:

> I am the Former Chief Operating Officer of Jetall, Inc., and reported to Ali Choudhri (hereinafter "Jetall") in that capacity and with respect to Choudhri's affairs. . . .
>
> 1.   ***I was in the room and a participant on a call with Ali Choudhri and Lloyd Kelley, and recorded that call at Ali's express request, and with his consent***. . . . The date of the recorded conversation was April 14, 2020, during my employment with Jetall and Choudhri. I made this recording in Mr. Choudhri's office, in his presence, as a participant on the entire call.
>
> 2.   Mr. Choudhri expressed to me that his purpose in having me record his call was to obtain evidence and leverage against Mr. Kelley to wipe out any debt allegedly owed to Kelley under a three million dollar promissory note, and to reacquire ownership of 2017 Yale from Mr. Kelley. . . .

14

> 3.  ***I was also in the room and a participant in additional conversations with Ali Choudhri, Michelle Fraga, Brad Parker, and Lloyd Kelley, and recorded those conversations at Ali's express request, and with his consent***. A true and correct transcript and audio file of each such conversation is also attached hereto as Exhibit B and C. The dates of the recorded conversations were 1/13/20 and 2/21/2020, respectively, for Exhibit B and C, all of which were during my employment with Jetall and Choudhri. I made these recordings in Mr. Choudhri's office, in his presence, as a participant in the entire conversations. . . . I made these recordings in Mr. Choudhri's office, in his presence, as a participant in the entire conversations.
>
> 4.  Mr. Choudhri expressed to me that his purpose in having me record the conversation in Exhibits B and C was to wipe out Kelley's interest in 2017 Yale and a $3 million promissory note. . . .
>
> 7.  I recorded these conversations live, with my phone, which is a device capable of reliably recording the conversation and preserving that recording as an audio file.

Exhibit 2 (emphasis added).[7]

Kelley's allegation in his Complaint that Wyatt was not a participant in the communications is immaterial because Wyatt's Declaration is clear that he was present during the communications at Choudhri's request. *See e.g.*, *Pitts Sales*, 383 F. Supp. 2d at 1361–62. Obviously, Wyatt could not have recorded the communications with his phone unless he was present.

Wyatt also attached to his Declaration as Exhibit B phone texts he received from Choudhri, asking Wyatt to record these phone communications. Exhibit 2. Wyatt explains that Choudhri asked him to record these communications because Choudhri was hoping to obtain statements from Kelley that he could use to prove that a $3 million promissory note and ownership of 2017 Yale that he had given Kelley were invalid. *Id*.

Wyatt's declaration that he was present with Choudhri when he recorded these

---

[7] Wyatt's Declaration is also attached to and authenticated by Sorrels' Declaration, Exhibit 3 hereto.

communications proves the consent exception to the Federal Wiretap Act and the Texas Wiretap Act. Therefore, there was no violation of the Wiretap Act. *See e.g.*, *Pitts Sales*, 383 F. Supp. 2d at 1361–62. In the face of Wyatt's Declaration that he was present during the recording of the phone communications, Kelley, who has the burden of proof, cannot show a *genuine* issue of material fact regarding lack of consent.[8]

Additionally, Kelley has no proof that Wyatt was not present during the communications he recorded with his cell phone. In his response to a motion to dismiss in Civil Action No. 4:22-cv-2175, Kelley states that "Wyatt was deposed over that declaration . . . ." Cause No. 4:22-cv-2175, Doc. 24, ¶34. Conspicuously absent from Kelley's response is any assertion that Wyatt recanted his declaration that he was present with Choudhri when he recorded the communications.

Sorrels is entitled to summary judgment on Kelley's claim under the Federal and Texas Wiretap Acts because there is unrebutted evidence (Wyatt's Declaration) that: (1) Wyatt was present during the communications, and (2) he made and consented to the recording of the communications.

Additionally, Kelley has the burden to prove a lack of consent. Sorrels is also entitled to summary judgment because there is no evidence that Wyatt was not present or did not

---

[8] *See Day v. Wells Fargo Bank Nat'l Ass'n*, 768 F.3d 435, 436 (5th Cir. 2014) ("In the face of the unrebutted evidence submitted by Wells Fargo, Appellants failed to show a genuine issue of material fact . . ."); *Crumbley v. Helem*, 485 Fed. Appx. 1, 4 (5th Cir. 2012) ("the unrebutted summary judgment evidence established that these officials were entitled to qualified immunity."); *Armstrong v. Marathon Petroleum Co., LP*, No. 3:16-CV-00115, 2018 WL 2976732, at *12 (S.D. Tex. May 1, 2018), report and recommendation adopted, No. 3:16-CV-00115, 2018 WL 2967327 (S.D. Tex. June 13, 2018) ("No genuine issue of material fact exists as to pretext given the extensive and unrebutted evidence that Armstrong was terminated due to his performance issues"); *Progressive Cnty. Mut. Ins. Co. v. Lujan*, No. 6:15-CV-009-C, 2015 WL 11035583, at *2 (N.D. Tex. Oct. 5, 2015) ("because Plaintiff's summary judgment evidence in support of its arguments goes unrebutted, Defendant Lujan has failed to show that a genuine issue of material fact exists so as to preclude summary judgment.").

consent to the recordings. *See Haydel Enters.*, 783 F.3d at 536.

> ### 2. *Unrebutted evidence proves that Sorrels did not know or have reason to know that the recording of the communications violated the Wiretap Acts and was not consented to by Wyatt and Choudhri.*

As discussed above, an essential element of the Wiretap Act claims is that the defendant knew or had reason to know that the interception of the communication was illegal and not consented to. *See e.g.*, *Thompson*, 970 F.2d at 749.

The evidence proves that Sorrels did not know or have reason to know that the recording of the communications violated the Wiretap Acts. Sorrels testifies in his Declaration that, before he used or disclosed the communications that Wyatt recorded, he determined that Wyatt's recording of the phone communications did not violate the Federal and Texas Wiretap Acts based on evidence that Choudhri consented to the recording and that Wyatt was present with Choudhri when Wyatt recorded the communications. Exhibit 3. Sorrels made this determination based on a "MEMORANDUM OF LAW CONFIRMING ADMISSIBILITY OF WYATT AUDIO" and the Exhibits referenced in the Memorandum, which included the Declaration of Chris Wyatt that Choudhri asked Wyatt to record the communications at issue and that Wyatt was present with Choudhri when he made the recordings with his cell phone. These materials were provided to Sorrels by a reputable attorney, Chris Ramey.[9] *Id.* Sorrels had no reason to doubt the facts stated in the

---

[9] Mr. Ramey is an attorney licensed by the State Bar of Texas, who is admitted to practice before the United States District Courts for the Southern, Eastern, and Western Districts of Texas. He has tried more than 40 cases to verdict or trial settlement in federal and state courts. Mr. Ramey formerly served as General Counsel and Chief Administrative Officer of the Houston Livestock Show & Rodeo and as Vice President of Legal for YRC Worldwide, Inc., a Fortune 500 Company (formerly Yellow Freight and Roadway). Mr. Ramey was responsible for leading the department's handling of worldwide litigation, claims, risk management, and operational support, including contracts, mergers and acquisitions, compliance, and strategic projects. Mr. Ramey held previous in-house positions as Associate General Counsel of EGL, Inc. (now CEVA Logistics), and counsel with Baker Hughes and BHP Billiton. https://www.rblegalgroup.com/managing-attorneys/chris-ramey/

MEMORANDUM and Wyatt's Declaration.

A copy of this MEMORANDUM, which has been redacted to remove disclosures of the recordings, is attached to Sorrels' Declaration, Exhibit 3. Among others, Sorrels relied on these statements in the Memorandum:

- "Both state and federal wiretap statutes allow interception of a phone conversation by a party to it or with consent of any party to it. Texas Penal Code § 16.02(c)(4)(a). T.C.P.R.C. 123.002 also clearly allows any consensual interception. "Without consent" is an element of a claim. T.C.P.R.C. 123.001."

- "The consent of one party to the conversation eliminates any claim of illegality as to the recording per se. *United States v. Fanning*, 477 F.2d 45 (5th Cir. 1973), cert. denied, 414 U.S. 1006 (1974). The Fourth Amendment does not protect "a wrongdoer's misplaced belief that a person to whom he voluntarily confides his wrongdoing will not reveal it." *Hoffa v. United States*, 385 U.S. 293, 302 (1966)."

- "Ali Choudhri had Chris Wyatt, another Jetall employee, record his conversations with Michelle Fraga, Lloyd Kelley, (and Brad Parker)."

- "The audio tape was recorded by Chris Wyatt both as a party to the call, present in the room with Choudhri the entire time, and at his express request and consent. As such, the tapes were legally obtained and are admissible, period."

- "Wyatt also showed Steadfast numerous texts from Ali Choudhri to Chris Wyatt requesting that he record conversations on Choudhri's behalf, including consents attached hereto as Exhibit 122."

- "There is no question that Wyatt has this audio legally. As this information came to Steadfast from a Party (Wyatt) clearly having been present during and participated on the call, and further testifying under oath (Exhibit B) prior to Steadfast's use that he was requested to record the call by Choudhri, another participant, Steadfast is fully justified in using this audio tape legally."

- "[T]he recording itself was clearly made by someone inside the room with Choudhri, as the clarity of Choudhri's voice, the rustling of papers and chairs, and buzzing of other phones on silent during the calls all attest. Steadfast has no reason to believe that these audio tapes were illegally intercepted. They clearly were not."

- "Wyatt has fully authenticated the tapes as well. Exhibit B, the declaration of Chris Wyatt, clearly passes the bar on authentication."

Exhibit 3. The Memorandum and Wyatt's Declaration are clear that Choudhri consented to the recording of the communications and that Wyatt was present during the communications

when he recorded them. There is no reason that Sorrels could not reasonably rely on them.

There is no affirmative duty to investigate or conclusively ascertain the legality of an interception where, as here, the information available tends to show that one of the parties to the intercepted conversation was the one who made the recording. *Boswell v. Fisher*, No. 05-80781-CIV, 2006 WL 8433669, at *6 (S.D. Fla. Apr. 24, 2006). In *Boswell*, the court granted summary judgment against Boswell's claim against Fisher for violation of 18 U.S.C. § 2511(1)(d) because the evidence was insufficient to create an issue of fact as to whether Fisher had reason to know the recordings were unlawful when he used them. *Id*. at *5. "The information available to Fisher was that Boswell himself had made the recordings and had therefore consented to them. Having that understanding, there would have been no need for Fisher to make further inquiry." *Id*. at *6.

All the evidence available to Sorrels when he used the communications in the arbitration proceeding indicated that the interception was not illegal because Choudhri had consented to the recording of the communications and Wyatt was present with Choudhri when he recorded them. Therefore, the Court should grant summary judgment on Kelley's claim under the Federal and Texas Wiretap Acts because in Exhibit 3 Sorrels presents unrebutted evidence that he did not know or have reason to know that the recording of the communications was illegal or violated the Acts. *See Celotex*, 477 U.S. at 322–23.

Sorrels is also entitled to summary judgment because there is an absence of evidence that Sorrels, before he used or disclosed the recordings, was aware of any evidence contradicting Wyatt's Declaration that Choudhri had consented to the recording of the communications and Wyatt was present with Choudhri when he recorded them. *See Haydel Enters.*, 783 F.3d at 536.

19

### 3. *Choudhri's Declaration does not create an issue of material fact.*

On August 17, 2023, Kelly filed a response to Sorrels' first amended motion for summary judgment (Doc. 12) that included as Exhibit I the Declaration of Ali Choudhri, which Choudhri states: in paragraph 12 "I never gave Chris Wyatt permission to tape any of my phone or other conversations." This statement is contradicted not only by Wyatt's Declaration but also by the copies of the text messages from Choudhri asking Wyatt to record his conversations on several occasions, attached as exhibits to Wyatt's Declaration.

But even if it is assumed that Choudhri's statement that he did not give Wyatt permission to record his conversations is true, Sorrels did not know or have reason to know that Wyatt's Declaration that Choudhri asked him to record the conversation was false. Sorrels states in his Declaration that he did not learn of Choudhri's declaration until it was filed with this Court on August 17, 2023, and that Choudhri has never told him that he did not consent to Wyatt's recording of the conversations. Exhibit 3.

In any event, Sorrels could and did rely on Wyatt's Declaration that he was present during the conversations at issue when he recorded them, and thereby consented to the recording. Kelley has no evidence that this part of Wyatt's declaration is false. By itself, Wyatt's declaration—that he was present during the conversations—is sufficient to prove that Sorrels did not know or have reason to know that Wyatt's interception and recording of the conversations violated the Federal and Texas Wiretap Acts. Choudhri's Declaration does not preclude summary judgment.

### 4. *There is an absence of evidence that Sorrels' disclosure of the communications caused Kelley actual damages or that Sorrels received any profits from such disclosure.*

The Federal Wiretap Act permits the recovery of the sum of the actual damages suffered by the plaintiff and any profits made by the violator as a result of the violation. 18 U.S.C. § 2520(c)(2). The Court should grant summary judgment on the Federal Wiretap Act

20

claim because there is an absence of evidence that Sorrels' disclosure of the communications caused Kelley actual damages or that Sorrels received any profits from such disclosure.

### F. If the Court grants summary judgment on the Federal Wiretap Act claim, it should dismiss the remaining state-law claims.

A district court generally should decline supplemental jurisdiction over state-law claims when it has dismissed all claims over which it has original jurisdiction. *See* 28 U.S.C. § 1367(c). "District courts enjoy wide discretion in determining whether to retain supplemental jurisdiction over a state claim once all federal claims are dismissed." *Heggemeier v. Caldwell Cnty., Tex.*, 826 F.3d 861, 872 (5th Cir. 2016). The general rule is "that a court should decline to exercise jurisdiction over remaining state-law claims when all federal-law claims are eliminated before trial." *Id.* This is "the preferred practice" when those state law claims have not been the subject of extensive litigation in federal court. *Putnam v. Williams*, 652 F.2d 497, 502 (5th Cir. 1981). "When the federal claims are dismissed before trial and only a state law claim remains, the balance of factors to be considered under the supplemental jurisdiction doctrine weigh heavily in favor of declining jurisdiction." *Marshall v. MarOpCo, Inc.*, 223 F. Supp. 3d 562, 570 (N.D. Tex. 2017).

Accordingly, if the Court grants summary judgment on the Federal Wiretap Act claim, it should decline jurisdiction of and dismiss the remaining state-law claims for tortious interference, defamation, conspiracy, aiding and abetting, and principal-agent liability.

### G. The Court lacks supplemental jurisdiction over Plaintiff's state law claims.

Kelley's Complaint alleges Texas state law claims for tortious interference, defamation, conspiracy, aiding and abetting, and principal-agent liability. "Aiding and abetting and conspiracy are theories of derivative or vicarious liability." *Nettles v. GTECH Corp.*, 606 S.W.3d 726, 738 (Tex. 2020). "These liability-spreading theories depend upon liability for an underlying tort, and they survive or fail alongside that tort." *Id*.

"[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that *they form part of the same case or controversy* under Article III of the United States Constitution. 28 U.S.C.S. § 1367 (emphasis added). "[F]ederal-question jurisdiction over a claim may authorize a federal court to exercise jurisdiction over state-law claims that may be viewed as part of the same case because they 'derive from a common nucleus of operative fact' as the federal claim." *Saldana-Fountain v. United States*, 693 F. App'x 295, 297 (5th Cir. 2017). "The state and federal claims must derive from a common nucleus of operative fact." *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725 (1966).

This Court lacks supplemental jurisdiction over Kelley's state law claims against Sorrels for tortious interference, defamation, conspiracy, and aiding and abetting because Kelley's Complaint does not allege facts showing that these claims derive from Sorrels' alleged disclosure of communications in violation of the Federal Wiretap Act. Doc. 1 ¶¶17 through 35. *See Saldana-Fountain*, 693 F. App'x at 297 (district court did not err in declining supplemental jurisdiction because it correctly determined that there is no "common nucleus of operative fact" among Saldana-Fountain's federal and state law claims); *Burnside v. Anthem Blue Cross Blue Shield*, No. CIV.A. 1:05-CV-570, 2006 WL 3499202, at *14 (E.D. Tex. Dec. 1, 2006) (Because plaintiff's state law claims for defamation, slander, and tortious interference with prospective contracts are wholly unrelated to plaintiff's federal claims under ERISA, there is no common nucleus of operative fact allowing the court to exercise supplemental jurisdiction over the state law claims).

## VI.   CONCLUSION

The Court should grant summary judgment on the claims under the Federal and

Texas Wiretap Acts because the evidence proves that: (1) Wyatt was present during the communications when he recorded them, and (2) Sorrels did not know or have reason to know that the recording of the communications was not consented to. Additionally, there is no evidence that Sorrels' alleged violation of the Acts caused Kelley any actual damages.

The Court should dismiss the Texas state-law claims because: (1) Kelley has no viable federal law claim, and (2) the Court does not have supplemental jurisdiction of the state-law claims.

Sorrels asks for any further relief that the Court deems appropriate.

Respectfully submitted,

**SORRELS LAW**

By: _/s/ Randall O. Sorrels_
Randall O. Sorrels
Federal Bar No. 11115
State Bar No. 1000000
230 Wescott St., Ste. 100
Houston, TX 77007
Telephone (713) 496-1100
Facsimile (713) 238-9500
randy@sorrelslaw.com
E-Service: eservice@sorrelslaw.com

**ATTORNEY FOR DEFENDANTS**

**CERTIFICATE OF SERVICE**

I certify that on May 28, 2025, a true and correct copy of the foregoing has been served on all counsel by filing it with the Court's ECF/Pacer system.

By: _/s/ Randall O. Sorrels_

23